UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PATRICIA DRAGON,                :
     Plaintiff,                 :
                                :
v.                              :     Civil No. 3:05cv00771 (JBA)
                                :
I.C. SYSTEM, INC.,              :
     Defendant.                 :

### Substituted Ruling on Plaintiff's Motion for Partial Summary Judgment [Doc. #35]

Plaintiff Patricia Dragon's Complaint [Doc. #1] against defendant I.C. System, Inc. ("ICS") claims inter alia violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, arising from defendant's efforts to collect on a debt allegedly owed by plaintiff to Dell Financial Services ("DFS"). By her Motion for Partial Summary Judgment [Doc. #35], Ms. Dragon seeks summary judgment on defendant's liability for violation of the FDCPA (Count One). Plaintiff's Motion will be granted in part.

### I.   Factual Background

In September 2004, plaintiff purchased a Dell personal computer which arrived by mail in defective condition, and which plaintiff mailed back on October 5, 2004. (Pl. letter to Rollins, Pl. Ex. 3 [Doc. #35-4] at 7.) Although Dell had promised to absorb the shipping charges, Dell Financial Services mistakenly billed plaintiff for that cost, which as of November 14, 2004 was $92.58 (inclusive of a $10.000 late fee). (Pl.

1

Aff., Pl. Ex. 3 [Doc. #35-4] at 1; Nov. 14, 2004 DFS bill, Pl. Ex. 3 [Doc. #35-4] at 6.)

Thereafter, defendant debt collector ICS, retained by DFS, sent plaintiff two billing letters. The first, dated January 18, 2005, was in the amount of $136.64 (Jan. 18, 2005 ICS bill, Pl. Ex. 3 [Doc. #35-4] at 5); the second, dated March 16, 2005, was for $198.46 (Mar. 16, 2005 ICS bill, Pl. Ex. 3 [Doc. #35-4] at 10). Both statements included the following language:

> Your account with Dell Financial Services is past due. We have been asked by Dell Financial Services to begin debt collection activity. . . . We are a debt collector attempting to collect a debt . . . Unless you notify us within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt it valid. If you notify us in writing within 30 days after receiving this notice that the debt or any portion thereof is disputed, we will: obtain verification of the debt (or obtain a copy of a judgment, if there is one) and mail you a copy of such judgment or verification. If you make a written request within 30 days after receiving this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

(Jan. 18, 2005 ICS bill, Pl. Ex. 3; Mar. 16, 2005 ICS bill, Pl. Ex. 3.) Plaintiff's Dell account number 6879450119022494011 appeared on the November bill from DFS and the two letters from defendant. The first collection letter from defendant dated January 18, 2005 included, in addition to plaintiff's Dell account number, ICS internal account number F0206996295151I0 ("first ICS account number"); in the March 16, 2005 billing letter, a different internal account number, F02086554551S3G0

2

("second ICS account number"), appeared.

On January 23, 2005, plaintiff sent two letters of complaint to Dell: one to President and CEO of Dell, Inc. Kevin B. Rollins (Pl. letter to Rollins, Pl. Ex. 3), and the other to Dell Chairman Michael S. Dell (Pl. letter to Dell, Pl. Ex. 3 [Doc. #35-4] at 8). Plaintiff then retained counsel, Attorney John C. Wirzbicki, who sent a letter dated February 2, 2005 to defendant stating: "I represent Ms. Dragon in connection with [account # 6879450119022494011]. Please be advised that Ms. Dragon disputes this debt. . . . Please direct all further communications to me. Please obtain verification of this debt and forward it to me." (Wirzbicki letter, Pl. Ex. 3 [Doc. #35-4] at 9.) The requested verification was never sent.

From the activity log of plaintiff's first ICS account number, on February 7, 2005 a "disputed flag"/"ATTY DISPUTE" is shown, after which date no further letters were sent or phone calls made to plaintiff as of March 15, 2005. (First ICS account log, Def. Ex. A [Doc. #40].) Defendant ICS has a "front-end team" responsible for collecting on an account during its first 120 days, and a "back-end team" which collects on an account from day 121 to day 180. (Def. 56(a)(2) [Doc. #41] ¶ 13.) While the first ICS account number is a front-end account known by its numerical shorthand designation "9629" (Beckstrom-Ehlers Dep. at 33, Pl. Ex. 4(a) [Doc. #35-5] at 13), the parties dispute the

3

significance of the second ICS account number in relation to ICS's divided "team" responsibilities: plaintiff maintains that the second ICS account number on the March 16 letter represents the transfer of her initial account to the back-end team; defendant — relying heavily on the deposition and affidavit of Shelley Beckstrom-Ehlers, supervisor of ICS's Dell collection team in the first half of 2005 (Beckstrom-Ehlers Aff. ¶ 3, Def. Exs. [Doc. #40] at 4) — urges that the second ICS account indicated the initiation of a new, separate debt placement by Dell but admits that the second ICS account was "cross-referenced to the first placement" (Def. 56(a)(2) ¶ 14). On April 28, 2005, DFS sent plaintiff a letter apologizing for having billed her "in the amount of $82.58" and informing her that she no longer had an account balance and that her account dispute was closed. (Apr. 28, 2005 DFS letter, Pl. Ex. 3 [Doc. #35-4] at 11.)

Plaintiff moves for summary judgment on liability based on defendant's non-disclosure of the amount of debt, defendant's contact with her after receiving an attorney dispute letter, and defendant's attempt to collect on a disputed debt before verification of that debt was provided. Defendant denies any wrongdoing, asserting a statutory "bona fide error" defense.

**II. Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

4

together with affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). The duty of the court is to determine whether there are issues to be tried and in making that determination, the Court must draw all factual inferences in favor of the party opposing the motion, viewing the factual disputes among materials such as affidavits, exhibits, and depositions in the light most favorable to that party. Phaneuf v. Fraikin, 448 F.3d 591, 595 (2d Cir. 2006). "If reasonable minds could differ as to the import of the evidence . . . and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal quotation, citation, and alteration omitted). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), not merely "some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**III. Discussion**

Plaintiff moves for summary judgment under multiple provisions of the FDCPA. It is undisputed that plaintiff is a "consumer" and defendant a "debt collector" for purposes of the FDCPA. Although "the Act imposes strict liability, . . . a debt collector may escape liability if it can demonstrate by a preponderance of the evidence that 'its violation [of the Act] was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" Russell v. Equifax A.R.S., 74 F.3d 30, 33-34 (2d Cir. 1996).

### A. Non-disclosure of amount of debt

Under the FDCPA, a debt collector may not falsely represent "the character, amount, or legal status of any debt," "use [] any false representation . . . to collect or attempt to collect any debt," or fail to provide the consumer with written notice containing the amount of the debt. 15 U.S.C. §§ 1692e(2), (10), 1692g(a)(1). Plaintiff contends that defendant violated these provisions by "asserting flatly in the notice required by § 1692g that the Balance Due was a sum certain . . . since defendant was hired to collect a balance that it knew would increase on a per diem basis, and monthly, by the amount of interest accrued and

6

late charges." (Pl. Mem. at 7.) By contrast, defendant asserts that its "letter made no representations about the balance being fixed or whether the balance sought to be collected might be different at any later date. . . . The amount sought in the letter was the precise amount which had been placed for collection by I.C.'s client, Dell Financial, the same amout which, if paid, would have satisfied the demand in full and would have caused the account to be closed." (Def. Opp. Mem. at 5.)

After DFS first informed plaintiff in November 2004 that she owed $92.58, defendant ICS's first communication to plaintiff, which plaintiff challenges for failure to properly disclose the amount due on the account, was a January 18, 2005 letter stating:

> Your account with Dell Financial Services is past due. We have been asked by Dell Financial Services to begin debt collection activity. If you would like to make payment arrangements please call 1-877-221-3940. We would like to give you the opportunity to clear this debt. Please make your check or money order payable to Dell Financial Services . . .

(Jan. 18, 2005 ICS bill, Pl. Ex. 3.) The letter also provided, "Principal Owed: $136.64; BALANCE DUE: $136.64." (Id.)

Plaintiff refers to the decision authored by Judge Posner in Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C., 214 F.3d 872, 875-76 (7th Cir. 2000), finding that a debt collector violated § 1692g(a)(1) by listing in its letter the unpaid principal balance of the loan, exclusive of "accrued but unpaid interest, unpaid late charges, escrow advances or other

7

charges for preservation and protection of the lender's interest in the property, as authorized by your loan agreement," and adding: "The amount to reinstate or pay off your loan changes daily. You may call our office for complete reinstatement and payoff figures." The Seventh Circuit found that "[t]he unpaid principal balance is not the debt; it is only part of the debt; the Act requires statement of the debt" and held that the collector should have "state[d] the total amount due – interest and other charges as well as principal – on the date the dunning letter was sent. We think the statute required this." Id. at 875. Accordingly, Miller found that:

> the following statement satisfies the debt collector's duty to state the amount of the debt in cases like this where the amount varies from date to date: "As of the date of this letter you owe $ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number]."

Id. at 876.

While plaintiff contends that defendant should have used this "safe harbor" language in its collection notice, Miller clarified that it did "not hold that a debt collector must use this form of words to avoid violating the statute; but if he does, and (to repeat an essential qualification) does not add other words that confuse the message, he will as a matter of law

8

have discharged his duty to state clearly the amount due." Id. Nevertheless, while the first notice stated generally "BALANCE DUE: $136.64," it did not state the effective date as of which this amount would suffice to pay off the debt in full,[1] nor did it acknowledge, as the record now reveals, that the amount to pay the debt in full could vary on the basis of account adjustment by Dell to reflect accrued interest and/or other fees and charges. (See Def. Opp. Mem. at 6 ("At the time of the letter and in the absence of an account adjustment by Dell, I.C. System could collect, but was under no requirement to collect, anything more than the amount originally placed for collection."); Beckstrom-Ehlers Aff. ¶ 21 ("Dell periodically updates its account to reflect interest or other charges which have accrued after Dell's initial placement. Account balances are not adjusted on a daily

---

[1] The cases interpreting Miller have held it to "requir[e] that the total amount of the debt be stated as the total amount due on the date a collection letter is sent," Jackson v. Aman Collection Serv., Inc., No. IP 01-0100-C-T/K, 2001 U.S. Dist. LEXIS 22238 (S.D. Ind. Dec. 14, 2001) (emphasis added); Chuway v. Nat'l Action Finan. Servs. Inc., 362 F.3d 944 (7th Cir. 2004); Smith v. GC Servs., L.P., No. 03 C 1017, 2003 WL 22208027 (N.D. Ill. Sept. 23, 2003) (denying defendant debt collector's motion for summary judgment where "balance due" did not include "accrued interest," which, if referring to "interest that had already accrued" as opposed to future interest, would violate the FDCPA); Jolly v. Shapiro, 237 F. Supp. 2d 888 (N.D. Ill. 2002) (granting defendant debt collector summary judgment because notice stated amount of debt as of specific date); accord Shea v. Codilis, No. 99 C 0057, 2000 U.S. Dist. LEXIS 4202 (N.D. Ill. 2000); Ingram v. Corporate Receivables, Inc., No. 02 C 6608, 2003 U.S. Dist. LEXIS 7475 (N.D. Ill. May 5, 2003) (denying debt collector's motion to dismiss plaintiff's § 1692g(a)(1) "amount" claim based on dunning notice's failure to "provide a specific statement as to the effective date of the stated amount due").

9

basis.  Dell typically provides updates monthly.").)

Thus, while the circumstances of this case are not identical to those in Miller, where no "balance due" amount was given and an 800-number was provided, or those in Goins v. JBC & Assocs., P.C., 352 F. Supp. 2d 262 (D. Conn. 2005), where the collection notice failed to inform the plaintiff that the claimed debt was based on debts owed to merchants other than the one identified, and also stated the maximum obtainable statutory damages that could be awarded against plaintiff in a civil action, this case is nevertheless one where not only did the collection notice not specifically indicate the date as of which the "BALANCE DUE" amount was the full amount of the debt, it also was potentially misleading for the "least sophisticated consumer" who could readily conclude that the total amount stated as due ($136.64) was due at any time, when in fact it was not and was subject to adjustment by Dell on a periodic basis.[2]  Accordingly, plaintiff's Motion for Summary Judgment on this violation will be granted.

**B.   Direct communication with plaintiff after receipt of attorney dispute letter**

Under the FDCPA, "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if

---

[2] Indeed, as of March 16, 2005, not two months after the initial collection notice, plaintiff received a subsequent notice indicating that the "BALANCE DUE" had been adjusted upward to $198.46.

10

the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address."  15 U.S.C. § 1692c(a)(2).  "In order to prevail under 1692c(a)(2), plaintiff[] must prove that defendant contacted [her] when it had 'actual knowledge that [she] was represented by an attorney.'" Jones v. Weiss, 95 F. Supp. 2d 105, 108 (N.D.N.Y. 2000).  As plaintiff acknowledges, "[c]ourts have construed the 'knowledge' component of 1692c(a)(2) to require that a debt collector possess 'actual knowledge' that the debtor was represented by an attorney."  Micare v. Foster & Garbus, 132 F. Supp. 2d 77, 80 (N.D.N.Y. 2001).  At the same time, a debt collector may not defeat the purposes of the FDCPA by "not seeking out information regarding the debtor's representation by counsel," id., and the debt collector must have actual knowledge that "the debtor is represented by counsel 'with respect to such debt,'" Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991).

Plaintiff contends that ICS's database indicated that she was represented by counsel on her first account number, which was linked to the second, and that her social security and Dell account numbers were tied to both ICS accounts.  From this, plaintiff argues, the necessary inference is that defendant had "actual knowledge" of its FDCPA violation by contacting plaintiff on a debt for which she was represented by counsel.  According to

11

defendant, it was not aware that its two internal collection account numbers reflected the same debt, and thus when collecting on the second did not know plaintiff was already represented by counsel for that debt.

The record does not demonstrate undisputedly that ICS <u>knew</u> that its second collection account number represented a separate debt of plaintiff's to Dell. <u>See</u> <u>Masuda v. Thomas Richards & Co.</u>, 759 F. Supp. 1456, 1464 (C.D. Cal. 1991) (finding genuine issue of material fact as to whether collector knew that consumer was represented with respect to debts assigned to collector after date of attorney letter, noting "[s]hould a second debt from the same consumer be assigned to the debt collector . . . the collector might be unaware of the previous file on that debtor and would not know whether the consumer was represented by an attorney with respect to all future debts"). While defendant's activity log shows that on March 15, 2005, when the second ICS account was "received," it was marked as "Tied by D[e]bt[or] SSN" to the first account (First account log, Def. Ex. A, at 5), and the printout of "Window 6" (the data window showing "the debits and the credits of late fees and interest" "available to [defendant's staff] looking at the account by pushing in the number 6 and enter") on plaintiff's first ICS account shows a summary log of both plaintiff's first and second ICS accounts (<u>see</u> Window 6, Pl. Ex. 4(b) [Doc. #35-6] at 7; Beckstrom-Ehlers

Dep. at 50, Pl. Ex. 4(a)), this evidence does not place beyond dispute whether an ICS collector viewing plaintiff's second account knew that the debt being collected was identical to that earlier flagged as disputed.

Thus, there is a genuine dispute of material fact for trial as to whether ICS engaged in collection efforts on its second account number while having actual knowledge that it represented the same debt as under plaintiff's first account number, with respect to which ICS indisputably knew that plaintiff was represented by counsel. Accordingly, plaintiff's Motion for Summary Judgment on this claimed violation must be denied.

### C. Collection after debt verification request

"If the consumer notifies the debt collector in writing within the [initial] thirty-day period . . . that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). Unlike § 1692c(a), § 1692g requires no intent; strict liability is imposed. See Russell, 74 F.3d at 34. "When determining whether § 1692g has been violated, an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector, is applied." Id.

It is undisputed that defendant never responded to plaintiff's attorney's request for debt verification from Dell. However, defendant maintains that, although "the dispute letter was conveyed to Dell," "[b]etween February 8, 2005 and March 15, 2005, Dell provided no validation of plaintiff's debt to I.C. for I.C. to pass along to the plaintiff," and thus defendant, in keeping with its policies, "refrained from further collection efforts and ultimately returned the account to Dell" and terminated it. (Beckstrom-Ehlers Aff. ¶¶ 11, 13, Def. Exs.) Notwithstanding defendant's explanation of how or why the second notice was generated with plaintiff's second ICS account, defendant does not dispute that both of its account numbers for plaintiff pertained to the same debt of plaintiff to Dell, which was disputed, and that it never obtained and mailed verification of the debt to plaintiff's counsel. As noted above, liability is strict – an unsophisticated consumer (indeed, even a sophisticated consumer) would have viewed the second notice from ICS as a collection effort with respect to the Dell debt plaintiff's counsel had provided notice she was disputing. Accordingly, there is no genuine issue of material fact for trial as to this claim, and plaintiff's Motion for Summary Judgment on this violation will be granted.

### D.  **Defendant's bona fide error defense**

Conceding that plaintiff's second ICS account "represented

14

an update of the same underlying account [as] the first" (Def. Mem. at 1), defendant claims the protection of the bona fide error defense in 15 U.S.C. § 1692k(c): "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Defendant would thus bear the burden of establishing this defense at trial and plaintiff here, in moving for summary judgment, bears the burden of demonstrating an absence of evidence to support an essential element of the defense. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim.").

Defendant relies on the bona fide error defense only with respect to its communication with plaintiff after receiving the attorney dispute letter and its collection attempts before obtaining debt verification. While, as discussed supra, there is a genuine dispute as to whether the claimed FDCPA violations were knowing or intentional, there is no dispute that defendant did

15

not maintain procedures reasonably adapted to avoid the error(s) resulting in those violations. Although defendant generally claims that it "had procedures in place which should have prevented re-placement with it of the underlying account" (Def. Opp. Mem. at 11), it fails to define "placement" or specifically how such procedures are "reasonably adapted" to avoid error.

Beckstrom-Ehlers states that, "The procedures in place [] intended to result in the cessation of collection activities on accounts where the dispute has been received and has been forwarded to Dell . . . provide that the account not come back to I.C. without validation of the debt to be forwarded to the debtor" (Beckstrom-Ehlers Aff. ¶ 18), and defendant has proffered evidence indicating its procedures for flagging an account as disputed and/or to indicate representation by an attorney. However, as Beckstrom-Ehlers admits, defendant allowed Dell to make "an entirely new placement of the account, with a different balance than the original balance on the first placement" such that "it was as though it was an entirely new debt" (id. ¶ 19). In fact, defendant's practice of using different internal debt collection account numbers for the same debt (and the same Dell account number) "almost invited" the error which occurred in this case. See Teel v. Thorp Credit Inc. of Ill., 609 F.2d 1268, 1270 (7th Cir. 1979) (forms utilized by collector "almost invited this variety of error"); see also Goins, 352 F. Supp. 2d at 273-74

16

(granting motion for partial summary judgment for plaintiff on defendant's bona fide error defense where defendant claimed that it had procedures in place "to avoid further communications with the consumer when [it] learns that the consumer is represented by counsel or has filed bankruptcy protection," where the Court found that when the collector received new debts owed, it did not create a new account based on the new debt, but "merged old information from [plaintiff's] 'master' account" and as a result sought to collect in its notice purportedly relating to the new claim debts that were "the subject of two lawsuits against defendants in which plaintiff was represented by counsel," and defendant proffered "no explanation about how the procedures were reasonably adapted to avoid merging 'held' accounts, or how the selection of a form letter referring to 'prior communications' could reflect 'maintenance of procedures reasonably adapted to avoid' processing 'held' accounts").

Defendant has simply failed to proffer evidence of any procedures maintained to avoid subsequent placements of debts already in its system from appearing as "entirely new debt[s]," thus permitting collection efforts notwithstanding that the consumer has already notified defendant of his/her representation by an attorney and/or dispute of the claimed debt. Accordingly, as defendant has not "demonstrate[d] that [it] maintain[ed] . . . procedures designed to prevent billing errors, and that [it]

17

reasonably relied on the accuracy of the information provided to it by [Dell] regarding unpaid bills," Howe v. Reader's Digest Assoc., Inc., 686 F. Supp. 461, 467 (S.D.N.Y. 1988); see also Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1030 (6th Cir. 1992), plaintiff is granted summary judgment on the bona fide error defense.

**IV. Conclusion**

Accordingly, plaintiff's Motion for Summary Judgment on Count One of her Complaint [Doc. #35] is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

/s/
_____
JANET BOND ARTERTON
United States District Judge

**Dated at New Haven, Connecticut, this 12th day of April, 2007.**